## W. S. GREENE *v.* MONROE COUNTY.

CORONER'S INQUEST.    *Fee of physician.*    *Code* 1892, § 824.

No allowance can be made by a board of supervisors to a surgeon or physician for services at a coroner's inquest in making a *post mortem* examination and chemical analysis to ascertain the cause of death, although made at the request of the coroner and jurors. Compensation is allowable only under § 824, code 1892, which covers the entire subject and authorizes a maximum fee of $10 to a surgeon or physician as *a witness* at the inquest.

FROM the circuit court of Monroe county.

HON. NEWNAN CAYCE, Judge.

In August, 1893, appellant, a physician, and two other physicians were summoned by the coroner, at the instance of the district attorney, to attend a coroner's inquest over the body of one Pegues, whose death it was suspected had been caused by poison feloniously administered. Upon arriving at the place where the inquest was being held, appellant and his associates were requested to make a dissection of the body in order to ascertain the cause of death. They declined to make same without compensation. Thereupon it was agreed by the coroner, and other members of the jury of inquest, that they would have the board of supervisors make a reasonable allowance for such service. Appellant and his associates then dissected the body, and made the necessary chemical analysis, and, after doing this, were summoned to testify as witnesses before the jury, and did appear and testify as to the result of their examination. Subsequently, the board of supervisors allowed appellant $10, the amount provided by § 824, code 1892.

Afterwards, in March, 1894, appellant presented to the board of supervisors an account for $100 for his services in making the dissection and *post mortem* examination. Testimony was introduced to show the reasonableness of the demand, but the

board refused to allow it, and appellant appealed to the circuit court, and this court having affirmed the order of the board of supervisors, this appeal is prosecuted.    Section 824, code 1892, is as follows:  "Whenever it may be necessary, in order to ascertain the cause of the death, the coroner, at the written request of a majority of the jurors, may cause some surgeon or physician to appear as a witness upon the taking of such inquest; and the fee of said surgeon or physician, in no case to exceed ten dollars, shall be paid as the coroner's fees are paid by law; and it shall be the duty of the coroner to deliver to the surgeon or physician the said written request of the jurors, and a copy of the verdict, both certified by him, and the fee shall be paid by the treasurer of the county on the warrant of the board of supervisors."

*Houston & Reynolds*, for appellant.

The exact question involved here has never been passed upon in this state.    There is a clear distinction between the question of extra compensation to physicians as witnesses, and the case at bar.    A medical expert cannot be compelled to make a *post mortem* examination, although, when the examination has been made, he can be compelled to disclose the result.    32 Am. R., 575;  25 *Ib.*, 619;  Rogers on Expert Testimony, § 189.    A court has no more right to compel a surgeon to part with his capital, by performing actual services without compensation, than to require a merchant to furnish articles for the court room, or a mechanic to put them in place, without remuneration. That a county is liable for such services performed at the request of the coroner, see 3 Ind., 497; *Ex parte Dement*, 25 Am. R. (Ala.), 611.    Appellant was entitled to no extra compensation as a witness, but for the expenditure of labor in the *post mortem*, he claims additional compensation.    Either the coroner or the county should pay for it.  If the service is really necessary, the coroner may, by his employment, bind the county to pay for the examination.    *Ex parte Dement, supra;* 1 Wil-

thus & Becker Med. Jur., 335, and cases cited.   The case is
not analogous to that of an attorney appointed to defend a pau-
per prisoner.   *Dismukes* v. *Board of Supervisors*, 58 Miss.,
612, is, therefore, not applicable.   It being established that, at
common law, if the right of the surgeon to compensation in
cases like this existed, he cannot be deprived of it, unless some
statute denies the right.   It requires a statute clearer and more
unequivocal than §§ 317, 320, code 1892, to deprive of this un-
doubted common law right.   The last clause of § 289 provides
that boards of supervisors shall have and exercise such further
powers as are, or shall be, conferred upon them by law.   By
§ 827 they not only have the power, but it is their duty, to pay
the costs of all inquests.   The coroner is a constitutional officer,
and it is his duty to inquire into and ascertain the cause of all
sudden deaths.   He is therefore necessarily clothed with dis-
cretion in the discharge of duty.   His authority, in this re-
spect, is necessarily judicial.   Vickers on Police Officers &
Coroners, 180, 209.

Section 824 does not profess to either authorize or prohibit
the allowance of compensation for *post mortem* examinations.
It deals with the fees of physicians as witnesses.   The code of
1871, § 253, recognized the injustice of our contention, and
provided for a fee of $50 for dissection before interment, and
$100 if made after.   The omission of this from the codes of
1880 and 1892 and the retention of the provision for compen-
sation as a witness, exactly as it was under the code of 1871,
emphasizes the distinction we contend for.   The compensation
for making a dissection is left to be fixed by whatever the tes-
timony shows to be reasonable in that particular case.

*Sykes & Bristow*, for appellee.

Section 824, code 1892, is an exact copy of § 359, code 1880.
An examination of the several statutes on this subject shows
that the policy of legislation in this state, from the beginning
until 1871, was against allowing any compensation for dissect-

ing a dead body; and after 1871, for nine years, a different policy was tried, until, in 1880, the old policy was returned to, and has been in existence ever since.    See act of 1822, Hutch. Code, 455; Code 1857, p. 130; Code 1871, § 253; Laws 1878, p. 189.

It is true, a surgeon cannot be compelled to render any professional services at any fixed rate of compensation; but he may be compelled, under penalty of punishment for contempt, to testify; and this has been held in most courts to embrace testimony even as to matters of scientific knowledge.    But he cannot be required to qualify himself to testify correctly by making dissections or chemical analyses of a dead body.    Should he make such service, he can claim compensation from the party at whose instance he rendered the service.    So far as the county is concerned, he can only claim the ten dollars provided by § 824, code 1892.    The board, in making the allowance, must cite the section authorizing it.    Code 1892, § 320.

*Frank Johnston,* attorney-general, on the same side.

The case does not depend upon any inquiry as to the common law powers of a coroner.    It is simply one of construction of statutes.    Section 824, code 1892, provides for the whole subject, and the compensation there provided is intended as a fee for all services rendered by the physician, as well as for testifying.    None of our statutes have ever left the amount of expert fees uncertain and open to inquiry on a *quantum meruit.*

Argued orally by *D. W. Houston,* for appellant, and *Frank Johnston,* attorney-general, for appellee.

WHITFELD, J., delivered the opinion of the court.

The remarkably ingenious and able argument of counsel for appellant places beyond doubt, if any there were, the common law power of the coroner to bind the county for reasonable compensation for the services of a physician or surgeon ren-

dered in a case necessary to the due administration of public justice in making a *post mortem* examination. And, if the question were one at common law, the argument would avail to carry the case. But the subject has been specifically legislated upon. From 1822 (Hutchinson's Code, p. 455) to 1857, no difference obtained between the compensation of ordinary and expert witnesses. By the code of 1857, p. 130, art. 147, it was provided that, on the request of a majority of the coroner's jury, "some surgeon or physician might be required to appear as a witness upon the taking of such inquest," and a fee of ten dollars was provided for such expert witness. The law remained thus till 1871, when (Code 1871, § 253) it was provided that, in addition to the ten dollars provided for in the code of 1857, if there was a dissection or chemical analysis made before the body was buried, there should be allowed a fee of just $50, and, if after, of just $100. These fees were fixed. In 1878 (Laws, p. 189) this was changed so as to provide that no allowance should be made unless there was a prosecution pending for the homicide of the dead person; and, if there should be, then, the board of supervisors were given discretion to make such allowance, not to exceed, as maximum allowances, the said sums of $50 and $100, as the case might be. And, if the physician or surgeon made a *post mortem* examination without dissection or chemical analysis, the fee was not to exceed $10.

The code of 1880, § 359, omits all these provisions for compensation for dissection and chemical analysis, and re-enacts the provisions of the code of 1857, except that the $10 are to be "paid on the allowance of the board of supervisors." The annotated code of 1892 is a copy of this provision of the code of 1880.

Here, then, we have from 1822 to 1871 the policy of the state, as declared by legislature, allowing no compensation to the physician or surgeon, either as an expert witness, testifying from his professional knowledge and skill, or for making a dissection or chemical analysis. Thereafter, for nine years, such

compensation was allowed, within the limits indicated; and in 1880 a return to the old policy is plainly manifested as the legislative will.

It is to be noted, also, that under § 824, code 1892, the coroner only calls in the physician or surgeon with the written consent of a majority of the jurors.

The contention that under § 289, code 1892, the board of supervisors may allow for such services, as one of the "other matters of county police," is unsound, because the very subject-matter under discussion has been legislated about specifically elsewhere, and we must presume the legislature, in such specific legislation, with its attention directly drawn to such subject, has declared not a part, but the whole of its purpose on this subject. "Other matters" must mean matters *ejusdem generis* with those specified. Nor do we think aid is to be derived from § 827, code 1892. "The cost of all inquests" is to be paid, as to manner of payment and authority for allowance, by the board of supervisors, but what that "cost" is, as to amount, must be gathered from the law as written. The board of supervisors shall direct, etc., but shall not appropriate the same to an object not authorized by law (§ 317, code 1892), and § 320 is stringent and imperative in its provisions that the board shall lay its finger on the very statute authorizing an allowance.

This review of our legislation on the subject leaves no room for doubt that, for reasons satisfactory to the legislature, with the wisdom of which we have nothing to do, but by the sanction of which as expressed in the statute we are bound, beyond the ten dollars provided in § 824, code 1892, no allowance can be made by the board of supervisors for compensation to a physician or surgeon, in the state of case named, viewed as a "fee" for testifying from professional skill and knowledge, or as a "fee" for the services rendered in the dissection and chemical analysis required in examining as to the cause of death. The remedy whereby such latter services, often indispensable

(and, in this case, clearly rendered in the due administration of public justice, and the fee demanded for which was altogether reasonable), are to be properly compensated, is in legislation. We can only say, "*ita lex scripta est,*" and affirm the judgment.

*Affirmed.*